UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KENNETH KARLSTON NEWSOME,

        Petitioner,

vs.                              Case No. 3:19-cv-7-HES-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

## I.  INTRODUCTION

This cause is before the Court on Petitioner Kenneth Karlston Newsome's Petition Under 28 U.S.C. § 2254 By a Person in Custody Pursuant to a State Court Judgment (Petition) (Doc. 1).  He challenges his state court (Duval County) conviction for attempted first degree murder with a weapon, kidnaping, and armed robbery.  Id. at 1-2.  Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 11).  Petitioner filed a Supplemental 28 U.S.C. § 2254 Petition (Supplemental Petition) (Doc. 14), and Respondents filed a Supplemental Response to Petition for Writ of Habeas Corpus (Supplemental Response) (Doc. 18).  Finally, Petitioner filed a

Traverse and Request for an Evidentiary Hearing (Reply) (Doc. 22). See Order (Doc. 10).

In the Petition, Petitioner raises four grounds. In the Supplemental Petition, he raises grounds five (with seven sub-claims) and ground six. Respondents contend ground one is procedurally defaulted and ground four is partially procedurally defaulted. Response at 4. In addition, Respondents contend ground five, with its seven sub-claims, is procedurally defaulted. Supplemental Response.[1]

## II.  EVIDENTIARY HEARING

In his Reply, Petitioner asks that the Court conduct an evidentiary hearing. "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017). To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d

---

[1] Respondents filed an Appendix to Answer (Doc. 11) and an Appendix to Supplemental Response (19). The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced. The Court will hereinafter refer to the Exhibits contained in the Appendices as "Ex." For the Petition, Response, Supplemental Petition, Supplemental Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020).

See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)

(opining a petitioner bears the burden of establishing the need for an

evidentiary hearing with more than speculative and inconcrete claims of need),

cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351

(11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or

based upon unsupported generalizations, the court is not required to conduct

an evidentiary hearing. Martin, 949 F.3d at 670 (quotation and citation

omitted). Here, the pertinent facts are fully developed in this record or the

record otherwise precludes habeas relief; therefore, this Court can "adequately

assess [Petitioner's] claim[s] without further factual development," Turner v.

Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034

(2004). Upon review, Petitioner has not met his burden as the record refutes

the asserted factual allegations or otherwise precludes habeas relief; therefore,

the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v.

Landrigan, 550 U.S. 465, 474 (2007). As such, Petitioner's request for an

evidentiary hearing will be denied.

## III.  HABEAS REVIEW

This Circuit opined that federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254). Further, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a very deferential framework, limiting the power of federal courts to grant relief if a state court denied a claim on its merits. Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 2021 WL 1240954 (U.S. Apr. 5, 2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Indeed, relief is limited to occasions where the state court's decision:

> "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a

4

> different outcome than the Supreme Court in a case with "materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 120 S. Ct. 1495.

<u>Lee</u>, 987 F.3d at 1017-18.

This high hurdle is not easily surmounted; if the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)). Also, a state court's finding of fact, whether state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." <u>Sealey</u>, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. <u>Brannan v. GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing

the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), petition for cert. filed, (U.S. Feb. 27, 2021) (No. 20-7589).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."   Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard."   Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 2021 WL 1240957 (U.S. Apr. 5, 2021).   To prevail on a claim of ineffective assistance

of counsel, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'" Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687). As both components under Strickland must be met, failure to meet either prong is fatal to the claim. Raheem, 995 F.3d at 908 (citation omitted).

Finally, the Eleventh Circuit warns:

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so. Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted). Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, 141 S. Ct. 1721 (2021).

## V. EXHAUSTION AND PROCEDURAL DEFAULT

Respondents contend ground one, part of ground four, and ground five are procedurally defaulted. The doctrine of procedural default requires the following:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747-748, 111 S. Ct. 2546; Sykes,[3] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural

---

2 Coleman v. Thompson, 501 U.S. 722 (1991).

3 Wainwright v. Sykes, 433 U.S. 72 (1977).

default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750). To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999). If cause is established, a petitioner must demonstrate prejudice. To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995). The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction

of the actually innocent. Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d

1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert.

denied, 569 U.S. 1004 (2013).

## A.   Ground One

In ground one, Petitioner raises the following claim:

> The trial court committed reversible error in denying
> the Petitioner's pre-trial motion in limine to exclude
> the video portion of his taped interview with police
> depicting him in jail uniform and handcuffs.

> This error was in violation of the Petitioner's Sixth
> Amendment right to a fair trial and his Fourteenth
> Amendment right to due process under the U.S.
> Constitution.

Petition at 19.

On direct appeal, Petitioner, through counsel, raised the following claim:

"The lower court committed reversible error in denying Mr. Newsome's motion

in limine to exclude the video portion of his statement to law enforcement

depicting him in jail uniform and handcuffs." Ex. B5 at i. It was claimed the

prejudicial effect of viewing Petitioner in prison clothing and restraints in the

videotaped interview undermined the due process requirement of a fair trial

and the presumption of innocence. Id. at 30. In support, it was noted that,

based on trial testimony, it was apparent Petitioner was under arrest for

different charges when interviewed at the jail. Id. at 31-32. Relying on

Florida Statute § 90.404, Petitioner argued the trial court erred in allowing the introduction of other crimes, wrongs, or acts, essentially attacking the character of the defendant. Id. at 32-33. Petitioner claimed prejudice is established by the jury seeing Petitioner under arrest, in jail garb, and in handcuffs. Id. at 33-34.

Upon review, Petitioner adequately exhausted his constitutional claim of deprivation of due process of law and his entitlement to a fair trial under the Sixth and Fourteenth Amendments by raising the matter on direct appeal. Finding the issue without merit, the 1st DCA affirmed Petitioner's Judgment and Sentence. Ex. B8 at 7. As the state court provided a merit-based ruling, this Court concludes ground one is not unexhausted nor is it procedurally defaulted.

## B.  Ground Four

In ground four, Petitioner raises the following claim of ineffective assistance of counsel:

> Defense counsel was ineffective for failing to object during cross-examination and closing arguments the improper impeachment of the Petitioner's alibi witness Pastor Duncan by the state alleging that he had been paid by Newsome's family to testify at trial.
>
> This error was in violation of the Petitioner's 14th Amendment rights to due process, and his 6th

>Amendment right to the effective assistance of counsel
>under the U.S. Constitution.

Petition at 33.

Respondents urge this Court to find that Petitioner only exhausted a portion of the claim, that portion alleging counsel was ineffective for failing to object during cross-examination of alibi witness Pastor Duncan. Response at 12-13. Indeed, upon review of the state court record, Petitioner did not exhaust the claim that his counsel was ineffective for failure to object during closing argument the improper impeachment Pastor Duncan by alleging he had been paid by Newsome's family to testify. In fact, ground six of the Rule 3.850 post-conviction motion asserts counsel performed deficiently in failing to object to the prosecutor cross-examining Dallas Duncan regarding an unsubstantiated claim that he had been bribed for his testimony, in violation of the United States Constitution and the Florida Constitution. Ex. C1 at 29-31.

In light of the above, the Court finds that portion of ground four claiming the ineffective assistance of counsel for failure to object during the prosecutor's closing argument is unexhausted and procedurally defaulted. It is clear from state law that any future attempts at exhaustion of this ground would be futile. As such, Petitioner has procedurally defaulted this ground for relief.

Furthermore, he has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of this portion of ground four.   Consequently, the Court will not address the merits of Petitioner's claim of ineffective assistance of counsel for failure to object during the prosecutor's closing argument concerning Pastor Duncan being paid for his testimony.

## C.   Ground Five

Respondents assert Ground Five, with its seven sub-claims, is procedurally defaulted.   <u>See</u> Supplemental Response.   The record demonstrates Petitioner raised his seven sub-claims to ground five in Defendant's Second Postconviction Motion; however, the trial court dismissed the motion as untimely filed more than two years after Petitioner's conviction became final.   Ex. F1.   The 1st DCA affirmed per curiam.   Ex. F4.

Conceding procedural default, Petitioner argues his procedural default should be excused based on the reasoning of <u>Martinez</u> because his post-conviction counsel provided ineffective assistance of counsel by failing to raise ground five (including all of its sub-claims) in the original Rule 3.850 motion. Ex. F1 at 1-2, 24; Supplemental Petition at 1-2.   Apparently, Petitioner contends that the procedural default was caused by his post-conviction counsel's ineffective assistance, the collateral proceeding in which counsel

erred was the first opportunity to raise the procedurally defaulted claim, and the procedurally defaulted claim, ground five (and its subclaims), has some merit.

The record demonstrates Petitioner had post-conviction counsel: "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 566 U.S. at 17. Petitioner relies on Martinez and asks that the default of ground five be excused pursuant to Martinez.

Per Martinez, this Court must ask whether this Petitioner has satisfied the standard for excusing a default. Petitioner blames his failure to raise these grounds in his Rule 3.850 motion on the fact that he had the ineffective assistance of post-conviction counsel. In relying on Martinez, Petitioner contends ground five has some merit, that is, he can demonstrate the underlying ineffective-assistance of counsel claims are substantial.

Martinez provides a narrow, equitable, non-constitutional exception to the holding in Coleman. To the extent Petitioner claims his procedural default should be excused based on the narrow exception under Martinez,

14

Petitioner must demonstrate the underlying ineffectiveness claim is substantial. To meet this requirement, Petitioner must demonstrate the claim has some merit. Martinez, 566 U.S. at 14. In this instance, the underlying ineffectiveness claims raised in ground five lack merit; therefore, Petitioner has not demonstrated he can satisfy an exception to the procedural bar. Hereinafter, the Court will provide a merits analysis for ground five (including the seven sub-claims).

## VI.   GROUND ONE

> The trial court committed reversible error in denying the Petitioner's pre-trial motion in limine to exclude the video portion of his taped interview with police depicting him in jail uniform and handcuffs.
>
> This error was in violation of the Petitioner's Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process under the U.S. Constitution.

Petition at 19.

Petitioner exhausted this claim by raising it on direct appeal. Ex. B5. The 1st DCA affirmed finding "no merit" to the issue. Ex. B8 at 7.

The 1st DCA's decision is entitled to AEDPA deference. Petitioner has failed to show the state court's decision for ground one was either an unreasonable determination of the facts or in contravention of federal law. The clearly established Federal law is limited to that which has been

15

determined by the Supreme Court of the United States, 28 U.S.C. § 2254(d)(1).
Petitioner has not shown that the rejection of this claim was either contrary
to, or involved an unreasonable determination of, clearly established Federal
law, or based on an unreasonable determination of the facts in light of the
evidence presented in the state court proceeding.   As such, ground one is due
to be denied.

In the alternative, Petitioner is not entitled to habeas relief.   A
discussion follows.

"[I]t is well accepted that shackling a defendant during a criminal trial
is 'inherently prejudicial.'"   Knight v. Florida, 76 So. 3d 879, 886 (Fla. 2011)
(per curiam) (citing Deck v. Missouri, 544 U.S. 622, 635 (2005) (quoting
Holbrook v. Flynn, 475 U.S. 560, 568 (1986)), cert. denied, 566 U.S. 998 (2012).
As such, visible shackles are limited to those occasions justified by an essential
state interest specific to the defendant on trial in order to avoid interference
with the accused's presumption of innocence and to ensure the fairness in the
jury's fact-finding duties.   Id. (citing Deck, 544 U.S. at 630, 624).   As the
Eleventh Circuit has explained, visible security restraints raise constitutional
problems because they may impact the jury's perception of the defendant.
Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1304 (2019), cert.
denied, 140 S. Ct. 2520 (2020).   Referencing the holding in Deck, the Eleventh

16

Circuit discussed the prohibition of visible restraints pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and the correlated due process concerns.  Id. at 1304-1305.  See Jones, 834 F.3d at 1320 (11th Cir. 2016) (recognizing that shackling may imply a defendant is considered a danger to the community).

The record demonstrates the following.  Prior to trial, defense counsel, Lerone M. Thurston, filed Defendant's First Motion in Limine on July 13, 2015. Ex. B1 at 43-45.  He advised that the state would seek to introduce the video portion of a jail interview conducted July 31, 2014, noting that Petitioner was questioned in police custody, wearing Duval County Jail issued clothing and temporarily handcuffed.  Id. at 44.  Mr. Thurston argued the probative value of observing Petitioner's demeanor and physical actions does not outweigh the prejudicial nature of the video and thus, the videotape is inadmissible under Fla. Stat. § 90.403.  Id.  As relief, Mr. Thurston asked the court to exclude the evidence, or, in the alternative, conduct an *in camera* examination of the videotape and place narrow restrictions on its introduction and use.  Id.

Immediately after jury selection, the following transpired:

> MR. OVERSTREET [the prosecutor]:  I believe there's one issue, Your Honor.  I think Mr. Thurston has an objection to the State playing a video and audio recorded interview of his client.  There was one that was taken in July, the defendant was serving a

> misdemeanor sentence, and thus is wearing a Duval
> County jail uniform as it were.  I believe he has an
> objection, just simply based on that.
>
> MR. THURSTON [defense counsel]:   That's
> correct, Your Honor.  The prejudicial nature of the
> video where the defendant is seen in handcuffs, in the
> county green as it were, in police custody, being
> questioned is – outweighs the probative value of seeing
> the defendant during the interrogation.  Prior to my
> coming into the case the attorneys had agreed that the
> audio portion of the interrogation would be played, and
> the video portion would be blacked out.  But the State
> has decided to change their position on the matter, and
> we filed a quick pro forma motion in limine this
> morning.  I don't know where it is in the system.

Ex. B2 at 137.

The prosecutor advised the court it was within its discretion to allow the

videotape, citing Black v. State, 120 So. 3d 654 (Fla. 1st DCA 2013) (per

curiam).  Ex. B2 at 137-38.  When the court inquired as to whether Petitioner

was in restraints during the interview, the prosecutor responded that

Petitioner walks into the interview in restraints, but it not clear whether he

remained in restraints because his hands did not come up during the interview.

Id. at 138.  The prosecutor argued the jury needed to see the videotape to

observe Petitioner's facial expressions and movements when confronted with

his fingerprint being found at the scene and the detective's request for a buccal

swab.  Id. at 138-39.  The prosecutor argued it was highly probative evidence for the jury, particularly in assessing Petitioner's credibility.  Id. at 139.

The court inquired as to the state changing its position that only the audio portion of the interview would be offered at trial.  Id. at 139.  Defense counsel told the court he was not notified until over the weekend, by electronic mail, that the state now intended to offer the video portion of the interview as well.  Id. at 140.  The state confirmed that was correct.  Id. at 141.  The court said it would take the matter under advisement.  Id.  On July 16, 2015, before the commencement of trial, the court announced its decision on the motion in limine.  Ex. B3 at 155.  The court stated it had reviewed the videotape and the accompanying audio.  Id. at 155.  The court found it was not a discovery violation and based on its review of the evidence and the arguments, found no undue prejudice to the defense.  Id. at 156.

The court stated it would show the defense has "a standing objection to the video."  Id. at 158.  Before the introduction of the videotape, defense counsel made no other objection than those previously discussed.  Id. at 291-92.  Before viewing and listening to the videotape, the court instructed the jury that the recording had been edited to eliminate irrelevant portions and that this fact should not influence or impact the jury in its consideration of the evidence.  Id. at 292.  The videotape was played for the jury.  Id. at 292-311.

19

At one point, Detective Stronko said to Petitioner:   "I know you are in jail but I have to ask you questions because you are in here."   Id. at 295.

The prosecutor, in response to Petitioner's objection, relied on the holding in Black.   In Black, 129 So. 3d at 655, the 1st DCA found the trial court's ruling was not an abuse of discretion although the videotaped police interview showed the appellant wearing a jail uniform, handcuffs, and leg chains.   The court found the probative value of the evidence was not substantially outweighed by unfair prejudice when considering the relevance of the inculpatory statements made to the detective in conjunction with the jury's ability to observe the demeanor of the defendant while making statements.   Id. at 656.   The Court of Criminal Appeals of Alabama made a similar ruling in Shaw v. State, 207 So. 3d 79, 99 (2014) (finding a videotaped interview of a defendant seen entering an interrogation room wearing a white jumpsuit and handcuffed but then the handcuffs are not visible did not adversely affect the defendant's substantial rights), cert. denied, 137 S. Ct. 828 (2017).   See Gates v. Zant, 863 F.2d 1492, 1502 (11th Cir.) (per curiam) (videotaped interview lasting fifteen minutes showing defendant in handcuffs that were not always visible "did not tend to negate the presumption of innocence or portray the defendant as a dangerous or bad person"), cert. denied, 493 U.S. 945 (1989).

Here, Petitioner did not stand before the jury in prison garb and restraints. Instead, the jury was allowed to watch a videotape, showing Petitioner in a jail uniform with a brief glimpse of Petitioner in hand restraints. The trial court watched the videotape and made its decision that the videotape did not cause undue prejudice to the defendant. Of course, pursuant to Deck, the visible shackling of the defendant during the guilt and/or penalty phases of the trial would be prohibited under the Fifth and Fourteenth Amendments absent a trial court determination that the viewing is justified. Not only was there a trial court determination that the viewing of the videotape was justified, the Petitioner did not stand before the jury restrained and in prison clothing. Under these circumstances, there was no constitutional violation. Therefore, ground one is due to be denied.

## VII.   GROUND TWO

> Defense counsel was ineffective for making a constitutionally deficient "boiler-plate" motion for judgment of acquittal with no facts or argument presented needed for the trial court to grant the motion.
>
> This error was in violation of the Petitioner's 14th Amendment right to due process and his 6th Amendment right to effective assistance of counsel under the U.S. Constitution.

Petition at 23.

Petitioner exhausted this claim by raising it in ground one of his post-conviction motion. Ex. C1 at 7-17. Applying the <u>Strickland</u> standard, the trial court denied post-conviction relief. <u>Id</u>. at 79-81. The 1st DCA per curiam affirmed. Ex. C4. The mandate issued on April 16, 2019. Ex. C7. As the state court properly applied the two-pronged <u>Strickland</u> standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the court denied the claim based on <u>Strickland</u>.

Thus, this Court must ask whether the court unreasonably applied that principle to the facts of Petitioner's case or premised its adjudication of the claim on an unreasonable determination of the facts. This Court is not convinced that there was an unreasonable application or an unreasonable determination of the facts. An explanation follows.

The trial court stated:

> A review of the transcript of the trial, specifically the Defendant's testimony, the Statement the Defendant gave to police at the time he gave them his DNA and the testimony of the eyewitness establishes that there is no way the Defendant could have placed his DNA in the car as described by him as there was no way he had access to the car between the time of the crime and the arrival of the police. Further the Defendant himself could not explain how his fingerprints were on the outside of the passenger side door handle of the car. Finally, his alibi as well as his testimony, was seriously impeached by the jail call with his mother. **Thus, the circumstantial evidence was**

> **inconsistent with the Defendant's version of the events**.

Ex. C1 at 81 (citations to state court exhibits omitted) (emphasis added).

At trial, George Johnson, the witness that heard the crash of the taxicab, testified he steadily looked out the window until the police arrived and he did not see anyone ride up on a bicycle. Ex. B3 at 214-15. He attested it took the police less than ten minutes to arrive at the scene, and during that time, Mr. Johnson did not see anyone approach the cab. Id. On cross examination, he stated he briefly went to his bedroom nightstand to retrieve his telephone, but he made the phone call to the police from the front door while he watched. Id. at 217-18.

Based on this testimony, the court concluded there was insufficient time for Petitioner to ride up on a bicycle, observe the cab still running and parked on the bank, park the bike on the curve, walk to the cab, go through the backseat of the cab looking for little things on the floor, and then look into the front seat of the cab, without being seen by the witness. Ex. B4 at 375-76 (Petitioner's trial testimony). Petitioner testified he first looked inside the back of the cab and found crack cocaine in a plastic bag. Id. at 376. He said once he got off of the floor of the back seat, he proceeded to look in the front seat. Id. He claims he was searching the cab for a minute, a minute-and-a-

half to two minutes.  Id. at 377.  He stated the door was open when he came upon the cab.  Id.  On cross-examination, he testified two doors were open. Id. at 383.  Petitioner had no explanation for his fingerprint being on the outside of the passenger rear door.  Id. at 385  He said two other doors were already open.  Id.

Based on a review of the testimony of Petitioner and Mr. Johnson, the trial court did not make an unreasonable determination of the facts.  The state court's findings of fact are entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1).  Petitioner has not presented clear and convincing evidence to the contrary; therefore, the presumption of correctness applies to the findings of fact.  Furthermore, the state court did not unreasonably apply Strickland to the facts before it.  Here, the state court applied clearly established federal law to reasonably determined facts; therefore, this Court will not disturb the state court's decision as the determination was not unreasonable.

As there was one reasoned state court judgment rejecting the claim of ineffective assistance of counsel followed by an unexplained order by the 1st DCA upholding the judgment, this Court will employ a look through presumption and presume the 1st DCA adopted the same reasoning. Applying the look through presumption described in Wilson, the state court's

ruling is based on a reasonable determination of the facts and a reasonable application of the law. Deference is due to the 1st DCA's decision as the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts. As such, ground two is denied.

## VIII. GROUND THREE

> Defense counsel was ineffective for failing to file a pre-trial motion to suppress from evidence the police interview videotape played for the jury at trial.
>
> This error was in violation of the Petitioner's 4th Amendment right against illegal police seizure of evidence, his 14th Amendment to due process, and his 6th Amendment right to the effective assistance of counsel under the U.S. Constitution.

Petition at 29.

Petitioner raised a similar claim in ground three of his post-conviction motion, asserting counsel was ineffective for failure to object to the video where Petitioner initially refuses to provide DNA. Ex. C1 at 19-22. Applying the <u>Strickland</u> standard, the trial court denied relief. <u>Id.</u> at 82. The 1st DCA per curiam affirmed. Ex. C4. As the state court properly applied the two-pronged <u>Strickland</u> standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the court denied the claim based on <u>Strickland</u>. Therefore, there are two remaining questions; this Court must

ask whether the court unreasonably applied that principle to the facts of Petitioner's case or premised its adjudication of the claim on an unreasonable determination of the facts. Upon review, the Court is not convinced that there was an unreasonable application or an unreasonable determination of the facts.

The court found the detective told Petitioner his DNA was going to be taken whether voluntarily or by court order, and Petitioner could provide his DNA voluntarily, which would be noted, or the detectives could get a court order. Ex. C1 at 82. The Court concluded that counsel did not perform deficiently under these particular circumstances, and Petitioner's was not prejudiced by counsel's performance. Id.

Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry. As such, Petitioner is not entitled to habeas relief on this ground. Therefore, deference is due to the 1st DCA's decision affirming the decision of the trial court in denying post-conviction relief. As such, ground three is denied.

The record demonstrates that during the interview, Detective Stronko told Petitioner:

> I mean we need to get a voluntary or – and you can refuse which is your choice[,] but we are going to have to compel it or attempt to compel it through a Judge for them to make this.   They are going to have to get a swab from you.

Ex. B3 at 305.

Petitioner relies on <u>Allen v. State</u>, 192 So. 3d 554, 558 (Fla. 4th DCA 2016) to support his position.   <u>See</u> <u>Baskin v. State</u>, 255 So. 3d 895, 899 (Fla. 2d Dist. App. 2018) (relying on <u>Allen</u> and "holding that evidence of the defendant's prearrest refusal to submit to a DNA test was not harmless, even where he submitted to the test postarrest, because the evidence was 'admitted to show his consciousness of guilt' and 'the state emphasized this erroneously admitted evidence in its closing argument'").   Respondents distinguish <u>Allen</u>, noting defendant Allen refused to provide a pre-arrest DNA swab, his pre-arrest refusal was admitted into evidence, and in closing, the prosecutor emphasized this refusal.   Response at 50.   <u>See</u> <u>Allen</u>, 192 So. 3d at 555-56. In contrast, Petitioner consented to providing a DNA swab, provided the DNA swab, and the prosecutor did not argue to the jury that Petitioner refused to consent.   Ex. B4 at 414-31, 444-49 (state's closing arguments).   Although, in the videotape, Petitioner was at first reluctant to provide a DNA swab, he consented to providing the swab when told that he could either provide it voluntarily or the police would get a court order because, inexplicably,

Petitioner's fingerprint had been found on the outside of the door of the cab, the scene of the crime. In closing argument, the prosecutor said, "because after much discussion with Detective Stronko about that swab that he eventually gave that was inevitable to be gotten it was sent to FDLE."[4] Id. at 446.

The bottom line is that even assuming deficient performance on the part of defense counsel, Petitioner was not prejudiced by the admission of the portion of the videotape exhibiting his initial reluctance to provide a DNA swab and any failure of counsel to file a pretrial motion to suppress. The record shows Petitioner agreed to provide a swab during the interview and did provide a swab. His fingerprint was found at the scene and, ultimately, his DNA was determined to be on the brown hat found in the cab. Unlike the circumstances in Allen, the prosecutor in Petitioner's case did not argue to the jury that Petitioner's reluctance or refusal to consent to the DNA swab at the inception of the interview was proof of Petitioner's guilt. See Allen, 192 So. 3d at 556. There is not a reasonable possibility that any error on the part of counsel in failing to file a pretrial motion to suppress contributed to the conviction.[5]

---

4 The police found a brown hat in the back of the cab and the DNA expert testified the DNA found on the brown hat matches the DNA profile of Petitioner. Ex. B3 at 256, 332-34.

5 Based on a pre-trial motion in limine for other reasons, the trial court viewed and listened to the videotape before trial and denied the motion in limine, finding no prejudice to the

Petitioner's failure to establish the prejudice prong of the <u>Strickland</u> standard is fatal to Petitioner's claim of ineffective assistance of counsel. Therefore, ground three is due to be denied.

## IX.   GROUND FOUR[6]

> Defense counsel was ineffective for failing to object during cross-examination . . . the improper impeachment of the Petitioner's alibi witness Pastor Duncan by the state alleging that he had been paid by Newsome's family to testify at trial.
>
> This error was in violation of the Petitioner's 14th Amendment rights to due process, and his 6th Amendment right to the effective assistance of counsel under the U.S. Constitution.

Petition at 33.

Petitioner raised a comparable claim in ground six of his post-conviction motion, asserting counsel was ineffective for failure to object to the prosecutor's cross-examination of Pastor Duncan.   Ex. C1 at 29-31.   Applying the <u>Strickland</u> standard, the trial court denied relief.   <u>Id</u>. at 83.   The 1st DCA per curiam affirmed.   Ex. C4.   As the state court properly applied the two-pronged <u>Strickland</u> standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the court denied the claim based on

---

defense.

[6] The Court will only address the exhausted portion of ground four.

Strickland.   As such, this Court must ask whether the court unreasonably applied that principle to the facts of Petitioner's case or premised its adjudication of the claim on an unreasonable determination of the facts.   The Court does not find there was an unreasonable application or an unreasonable determination of the facts.

The trial court succinctly denied this ground finding:

> In Ground Six, Defendant claims counsel was ineffective for failing to object to the State's cross examination of the alibi witness.   Counsel filed a Notice of Alibi.   That alibi witness was called to testify at trial, that at the time of the crime the Defendant was at the witness's home getting money. A review of the transcript of the testimony of the alibi witness as well as cross examination by the State rebuts the allegation that any objection would have been sustained.   [Ex. K]   The questioning by the State was proper impeachment.

Ex. C1 at 83.   The 1st DCA affirmed this decision.   Ex. C4.

The record shows Dallas Duncan testified at trial.   Ex. B4 at 356-66. Pastor Duncan testified Petitioner called him about 1:30 a.m., showed up on a bicycle at approximately 1:50 a.m., and came to the door with a dark brown, blue hat in his hands.   Id. at 358-59.   They had a five minute conversation and Pastor Duncan gave Petitioner $20 for food.   Id. at 359-60.   Petitioner left on his bicycle.   Id. at 360.   The prosecutor, on cross-examination, asked Pastor Duncan if he had three felonies, and Pastor Duncan confirmed that fact.

Id. at 361-62.   The prosecutor asked if anyone had told Pastor Duncan what to say.   Id. at 362.   Pastor Duncan said no.   Id.

The prosecutor then inquired about Pastor Duncan's deposition.   Id. The prosecutor asked, "[a]nd the defendant's mother gave you money to testify in that deposition, didn't she?"   Id.   Pastor Duncan responded no.   Id. at 363. The prosecutor referred back to Pastor Duncan's testimony when he said Petitioner's mother "was downstairs fixing" to give Pastor Duncan money.   Id. Pastor Duncan explained he was just borrowing money and the two families reciprocated helping one another.   Id.   Pastor Duncan said he was going to be given money to take care of personal issues having nothing to do with Petitioner's criminal case.   Id. at 364.

This was proper impeachment.   Pastor Duncan had a felony record. Additionally, he had apparently testified in his deposition that Petitioner's mother was going to give him some money after the deposition, meaning the prosecutor could properly inquire about the nature of this transaction and its impact on Pastor Duncan's trial testimony.

There is no reasonable probability that the outcome of the case would have been different if defense counsel had taken the action suggested by Petitioner.   Instead of making an objection during cross-examination, defense counsel effectively used re-direct examination to address the matter, skillfully

31

re-directing the jury's attention to Pastor Duncan's relationship with Petitioner's mother. Id. at 364. Pastor Duncan said he considered Petitioner's mother family and would help her, but "not in lies." Id. More importantly, on cross-examination defense counsel was prepared to ask how much money Pastor Duncan received from Petitioner's mother. Id. at 365. Pastor Duncan's responded he did not obtain any money from Petitioner's mother after the deposition. Id. Instead, Pastor Duncan testified he was given money by another family member, so he did not need money from Petitioner's mother and did not get any money from her. Id.

Under these circumstances, defense counsel did not perform deficiently in failing to object to the prosecutor's cross-examination of Pastor Duncan. Defense counsel took the effective approach of using re-direct examination to address the matters raised on cross-examination and to show that Pastor Duncan's testimony was not bought and paid for by Petitioner's mother but rather Pastor Duncan had a close familial relationship with Petitioner's mother but would not lie to support that relationship.

The court is not convinced that, under these circumstances, counsel's performance fell outside the broad range of reasonably profession assistance. The standard is reasonable performance, not perfection. Certainly, counsel's decision to use re-direct examination to counter the state's cross-examination

was well within the broad range of reasonably effective assistance. As noted by Respondents, Mr. Duncan's testimony was successfully rehabilitated by trial counsel on re-direct. Response at 55. Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained as the questioning by the state was proper impeachment. Thus, there was nothing defective in counsel's approach or any errors made in failing to object.

In denying post-conviction relief, the trial court properly applied the two-pronged Strickland standard of review. Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on Strickland. Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry. Furthermore, the 1st DCA affirmed the decision of the trial court.

The Court finds the state court's determination is consistent with federal precedent. The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. In brief, the state court's

adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts. This claim is due to be denied.

## X. GROUND FIVE

> Petitioner's judgment and sentence violates constitutional provisions of federal and state laws as a result of inept, subst[and]ard and prejudicial representation of trial counsel.

Supplemental Petition at 9.

Petitioner has shown neither cause nor prejudice for failure to properly present this claim in the state courts. As such, the claim is unexhausted and procedurally defaulted. As noted above, Petitioner relies on Martinez and this Court will undergo a merits analysis for ground five.

Although not a model of clarity, Petitioner apparently claims his counsel was ill-prepared for trial and failed to obtain expert witnesses to address the DNA and fingerprint evidence and simply relied upon what the state presented. Supplemental Petition at 9-10. The record demonstrates otherwise. Counsel was well-prepared to handle the cross-examination of the fingerprint examiner and the DNA expert, and counsel effectively conducted himself during cross-examination of these experts.[7]

---

[7] As Petitioner took the stand and admitted he went into the taxicab and left his brown hat inside of the cab, it is not entirely clear what Petitioner expected counsel to do under these

Latent fingerprint examiner Tom Howell testified at trial.  Ex. B3 at 267-75.  Defense counsel, on cross-examination, effectively showed that Mr. Howell did not have a college degree, had not taken any college level courses in biology, genetics, or statistics, and was not certified by the International Association for Identification.  Id. at 275-77.  Mr. Howell testified that his lab had not been accredited by the ASCLD dash LAB.  Id. at 277.

Mr. Howell testified on cross-examination that if he identified a latent print to a person, that item is given to another examiner to verify the identification.  Id. at 281.  Mr. Howell testified he was able to identify Petitioner based upon a computer search, the Jacksonville Sheriff's Office AFIS (automated fingerprint identification system).  Id. at 281-82.  The identification system gives the examiner a candidate, but the examiner must visually look at the latent print and the inked fingerprint and decide whether the latent print was made by the individual.  Id. at 282.  Mr. Howell said the system usually gives twenty-five candidates, and in this instance, Petitioner was the number one candidate.  Id. at 283.  Mr. Howell explained, he would go to the number two candidate only if dissatisfied that the print was not a match to the first candidate.  Id.  Mr. Howell testified he made the

---

circumstances.  Ex. B4 at 371-90.  Despite his admitted presence in the cab, Petitioner offered no explanation as to how his fingerprint landed on the outer passenger rear door.  Id. at 385.  Petitioner simply said he did not recall opening the door.  Id. at 386.

identification and then it was verified by another examiner who agreed with Mr. Howell.  Id. at 284.

Jeannelyn Adona, an expert in DNA analysis who works for the Florida Department of Law Enforcement in the Jacksonville Regional Operations Center in the biology and DNA section, testified at trial.  Ex. B3 at 318-35. She attested that the DNA from the brown hat matches the DNA profile from Petitioner.  Id. at 334-35.  Importantly, on cross-examination, defense counsel brought out the fact that the blue hat with a red brown stain found at the scene contained DNA that was a match for a person named William Mungin.  Id. at 342-43.  Ms. Adona attested that the DNA material from the blue hat also included a minor DNA profile that matches the DNA profile of Mr. Jean-Gilles, the victim.  Id. at 341.  She testified a blood test was performed on the blue hat, but it was not performed on the brown hat because no staining was observed on that hat.  Id. at 335-36, 337-39.

Very effectively, defense counsel asked Ms. Adona if she had informed law enforcement that her office had determined the source of the person who deposited the DNA on the blue hat, and she responded in the affirmative and provided the name: William Mungin.  Id. at 342-43.  Up until that time, the state had managed to keep Mr. Mungin's name out of the trial.  Thus, right

before the state rested, the defense was able to present testimony of the name of another individual whose DNA was deposited on evidence found at the scene.

This claim of ineffective assistance of counsel has no merit. Defense counsel was prepared to cross examine the state's expert witnesses and he effectively did so. The Court is not convinced that there was prejudice such that the result of the proceedings would have been different if counsel had acted as Petitioner claims he should have done.

The Court concludes Petitioner's unexhausted claim of ineffective assistance of counsel is not substantial, and Petitioner has failed to show he falls within the narrow parameters of the ruling in <u>Martinez</u>. As he has failed to demonstrate that his underlying claim of ineffective assistance of counsel is a substantial one, Petitioner simply does not meet the narrow exception set forth in <u>Martinez</u> and his default is not excused.

In short, the Court finds ground five is unexhausted and procedurally defaulted. Furthermore, he has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of ground five. Petitioner has not demonstrated he meets the allowable exceptions to the procedural default doctrine. Having failed to establish cause for the procedural default of ground five, the Court finds it to be procedurally barred and should not be addressed on its merits in this federal post-conviction

proceeding.   Therefore, ground five is due to be denied as procedurally defaulted.

## XI.   GROUND FIVE A

Trial counsel failed to file preliminary motions.

Supplemental Petition at 11.

Petitioner has shown neither cause nor prejudice for failure to properly present this claim in the state courts.   As such, the claim is unexhausted and procedurally defaulted.   As noted above, Petitioner relies on Martinez and this Court will undergo a merits analysis for ground five A.

In particular, Petitioner complains his counsel failed to move to suppress the videotape.   Id.   Petitioner raised a similar ground in ground three of the Petition.   To the extent the claim has been addressed by the Court in ground three, it will not be readdressed under this supplemental claim.   As such, ground five A is due to be denied as stated previously in this opinion.[8]

To the extent Petitioner presents a new claim that his counsel was ineffective for not filing a motion to suppress the video of his interrogation by the police based upon failure of the interrogators to notice defense counsel

---

[8] Notably, defense counsel did file a motion in limine, and after the court denied the motion, the court recognized counsel had a standing objection to the showing of the videotape.

already representing Petitioner, the Court finds that claim is not substantial. An explanation follows.

As noted by Respondents, the interview took place on July 31, 2014, Ex. B3 at 290-311, and Petitioner was not arrested until November 22, 2014, Ex. B1 at 1-2.   Petitioner was not appointed counsel to represent him in case no. 162014CF010887 until November 23, 2014, when the court appointed the public defender.   Ex. A at 9; Ex. B1 at 11.   Petitioner may have had representation in a different case at the time of the interview, but he did not have counsel for the crime occurring on June 10, 2014 against Marcel Jean Gilles.   Ex. B1 at 14.

The record shows that prior to making his statement to the officers, Petitioner was properly advised of his Miranda[9] rights and freely waived them. Ex. B3 at 293-98.   See Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1301 (11th Cir. 2007) ("[I]f an accused is properly advised of the right to counsel under Miranda and non-coercively, knowingly and intelligently waives that right, representation by counsel on an unrelated matter will not taint that waiver and the statements are admissible.") (citing McNeil v. Wisconsin, 501 U.S. 171, 177-82 (1991)), cert. denied, 552 U.S. 1190 (2008); United States v.

---

[9] Miranda v. Arizona, 384 U.S. 436 (1966).

Argueta, No. 1:10-CR-00086-26RWS, 2012 WL 3871911, at *1 (N.D. Ga. Sept. 5, 2012) (not reported in F.Supp.2d) (adopting report and recommendation) (same).  As such, Petitioner's claim does not have some merit.

Petitioner has failed to show that the narrow exception recognized in Martinez is applicable.  Since Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception.  Therefore, he has failed to establish cause for the procedural default of his claim raised in ground five A and his default is not excused.  In sum, the Court finds this ground procedurally barred and should not be addressed on its merits in this federal proceeding.

## XII.   GROUND FIVE B

> Defense counsel prejudicially condones state[']s prejudicial exclusion of blacks from sitting on jury panel.

Supplemental Petition at 12.

Petitioner has shown neither cause nor prejudice for failure to properly present this claim in the state courts.  As such, the claim is unexhausted and procedurally defaulted.  As noted above, Petitioner relies on Martinez and this Court will undergo a merits analysis for ground five B.

In essence, Petitioner claims his counsel was ineffective for not objecting to five of the state's challenges for cause (jurors #27, #32, #37, #41, and #42)

and four peremptory challenges (jurors #2, #12, #20, and #23).   Respondents

argue Petitioner's contention is not a substantial one:

> [B]efore the state brought cause challenges against
> perspective [sic] jurors no. 27 (Cheryl Jaudon), no 32
> (Keia Coenen), no. 37 (Virgil Mims), no. 41 (Jennifer
> Dykes) and no. 42 (Sharon Todd), each of them said
> they didn't think they could be fair and impartial if
> selected as jurors for Petitioner's trial.   Thus, it was
> unnecessary for defense counsel to object, as valid
> grounds to support the state's challenges had
> previously been established on the record.   Similarly,
> before the state exercised its peremptory challenges
> against jurors no. 2 (Ann Cowan), no. 12 (Paul
> Barbato), no 20 (Lecheles Magby) and no. 23 (Maggie
> Rogers), each of the prospective jurors had clearly
> articulated race-neutral grounds to do so on the
> record.   Thus, it was unnecessary for defense counsel
> to object, as valid, race-neutral grounds to support the
> state's challenges had previously been established on
> the record.

Supplemental Response at 18-19.

The record demonstrates counsel was not ineffective for failure to object

to the challenges for cause (#27 Cheryl Jaudon, #32 Keia Coenen, #37 Virgil

Mims, #41 Jennifer Dykes, and #42 Sharon Todd) as each one had either

expressed an inability to follow the law and/or an inability to be fair and

impartial on the record.   Id. at 10-13.   Ex. B2 (Jury Selection).   Defense

counsel did not object to these strikes.   Ex. B2 at 121-23.   Of interest, at one

point, the state accepted the panel, but the defense continued to strike additional panel members.  Id. at 126-27.

With regard to peremptory challenge of #2, Ann Cowan, the state had previously attempted to strike her for cause, but the court denied the for cause challenge.  Id. at 117.   Notably, defense counsel objected to the challenge for cause, stating Ms. Cowan said she had a problem with the principal theory, but she did not state she could not follow the court's instruction.  Id.  The court sustained the objection and denied the state's challenge for cause.  Id. at 118.   The record shows Ms. Cowan did have a problem with the principal theory and expressed her concerns during voir dire.  Id. at 52-55.   Thus, there was a race neutral reason for the peremptory challenge on the record. Therefore, counsel did not perform deficiently by failing to object to the state's peremptory challenge.

Mr. Barbato, #12, described himself as a former criminal defense attorney and an active attorney.  Id. at 16-17, 63, 127.   He said both his son and daughter had been arrested, and he was frustrated with how his daughter had been treated.  Id. at 83-84.   Thus, there was sufficient race-neutral reasons on the record for the peremptory strike and counsel did not perform deficiently in failing to object to the state's peremptory strike.  See Supplemental Response at 16-17.

Ms. Magby, #20, expressed dissatisfaction with law enforcement after her car had been stolen.  Ex. B2 at 21, 112, 127.  Ms. Magby said the police did not do a good job; she got her car back "after it was shot up, after it was involved in something."  Id. at 112.  Thus, a race-neutral reason for a peremptory challenge was already on the record.  As such, defense counsel did not render deficient performance for failing to object to the peremptory challenge of Ms. Magby.  See Response at 17.

With regard to Ms. Rogers, #23, she said her brother had been arrested for two DUI's, but she felt he was treated fairly.  Ex. B2 at 87.  More significantly, the state first challenged Ms. Rogers for cause, stating she had disclosed being arrested for petit theft in 2002.  Id. at 119.  Defense counsel inquired as to whether she was adjudicated.  Id. at 120.  The prosecutor said he believed so, but at least accused.  Id.  Defense counsel objected stating he believed Ms. Rogers may have been bogged down with all of the questions.  Id.  The court, in an abundance of caution, denied the state's challenge for cause.  Id.  Thereafter, the state used its peremptory challenge against Ms. Rogers, without objection.  Id. at 127-28.  Again, there were sufficient grounds for a race-neutral peremptory challenge on the record; therefore, counsel did not perform deficiently.  See Response at 18.  Finally, and importantly, after

conferring with his counsel, on the record Petitioner stated his satisfaction with his counsel and the jury selected.   Ex. B2 at 129-31.

The Court finds ground five B does not have some merit.   As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in <u>Martinez</u> is inapplicable and does not excuse the procedural default of ground five B.   In conclusion, Petitioner has failed to establish cause for the procedural default of his claim raised in ground five B and his default is not excused.   Accordingly, ground five B is procedurally barred and should not be addressed on its merits.

## XIII.   GROUND FIVE C

> Defense counsel failed to object to prosecution testifying and further noticing trial court of prosecutorial misconduct.

Supplemental Petition at 13.

Petitioner has shown neither cause nor prejudice for failure to properly present this claim in the state courts.   As such, the claim is unexhausted and procedurally defaulted.   As noted above, Petitioner relies on <u>Martinez</u> and this Court will undergo a merits analysis for ground five C.

Petitioner references three lines from the prosecutor's opening statement which were presented without objection and Petitioner asserts they constituted improper testimony by the prosecutor.   Supplemental Petition at 13

(transcript p. 170 L 18 "The defendant took the knives out of the holes[.]"; p. 170 L 23 "Mr. Jean-Gilles will tell you he did all he could to push himself out of that cab[.]"; and p. 171 L2 "Mr. Jean-Gilles will tell you that as he is on the ground outside of the taxicab he could see the man in the back seat[.]"). Ex. B3 at 170-71.

Of course, prior to opening statements, the court instructed the jury on the purpose of the opening statements by the attorneys:

> At the beginning of the trial, essentially where we are now, the attorneys will have an opportunity if they wish to make an opening statement. The opening statement gives the attorneys a chance to tell you what evidence they believe will be presented during the trial. What the lawyers say is not evidence, and you are not to consider it as such.

Id. at 160-61.

The prosecutor told the jury he expected Mr. Jean-Gilles to testify as to the above-mentioned circumstances. At trial, Mr. Jean-Gilles testified, "the guy in the back put two knife [sic] in my neck and cut my neck, and he pushed the knife very deep into my neck." Id. at 185. He continued, "I feel the knife cut here and he pushed his knife into my neck very deep . . . ." Id. He continued in this vein: "[h]e just pulled the knife inside the hole to cut my neck." Id. at 186-87.

Mr. Jean-Gilles also testified as to his struggle to get out of the cab:

> I keep my head there and the guy in the front he go on
> top of me to – to pull me back inside the car but I keep
> pushing and I keep my head bend [sic] toward the door
> and I keep pushing anyway I can with my hand, with
> my foot, anywhere I can to push – to exit the door, and
> I fight and I fight with them go on top of me to pull me
> back in the car, but in -- I push until I fell on the
> ground.

Id. at 188.   Although Mr. Jean-Gilles described the struggle, he did not mention seeing the man in the back seat of the cab from the ground.

The prosecutor merely told the jury what he thought the witness would say during his testimony.  The prosecutor's comments reflected the content and meaning of the victim's testimony, if not his exact words.   These statements did not improperly deceive the jury or mislead the jury. Furthermore, any objection by defense counsel would have been futile as they would have been overruled because the statements are not inadmissible.

Moreover, "[t]he standing presumption is that jurors follow instructions."  Graham v. Fla. Att'y Gen., No. 5:11-cv-505, 2014 WL 2118877, at *4 (M.D. Fla. May 20, 2014) (not reported in F.Supp.3d) (citing Penry v. Johnson, 532 U.S. 782, 799 (2001)); Richardson v. Marsh, 481 U.S. 200, 206 (1987); Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985)).  Here the court instructed the jury that what the lawyers said during opening statements was

not evidence.   There is no evidence that the jury failed to follow the court's instructions.

In failing to demonstrate counsel's performance was deficient, Petitioner has failed to show his underlying claim of ineffective assistance of counsel has some merit.   Any failure to object during opening statement did not fall outside the wide range of reasonably professional assistance.

Petitioner also complains that the prosecutor testified to the jurors during closing argument, deliberately misstated the facts and testified to facts not in evidence, and finally, misstated the law when attempting to define reasonable doubt and when addressing the matter of the principal jury instruction.   Supplemental Petition at 14.   Petitioner asserts counsel was ineffective for letting the prosecutor make these impermissible comments and letting the prosecutor make a call for justice without objection.   Id.

Of import, the court instructed the jury immediately prior to closing argument:

> Both the state and the defense have now rested their case.   The attorneys now will present their final arguments.
>
> Please remember that what the attorneys say is not evidence or your instruction on the law.   However, do listen closely to their arguments.   They are intended to aid you in understanding the case.

Ex. B4 at 414.   After closing arguments, the court instructed:   "[t]his case must be decided only on the evidence that you have heard from the testimony of the witnesses and have seen in the form of the exhibits in evidence and these instructions."   Id. at 471.   The court further instructed, "[y]our duty is to determine if the defendant has been proven guilty or not in accord with the law."   Id. at 472.   The court reminded the jury:   "[y]our verdict must be based on the evidence and on the law contained in these instructions."   Id.

The Court presumes the jury followed these instructions and presumes the jury did not consider the prosecutor's comments during closing argument as evidence.   "[It is] the almost invariable assumption of the law that jurors follow their instructions."   Richardson, 481 U.S. at 206.   Thus, this Court should presume that the jury acted according to law.   Strickland, 466 U.S. at 694.

This Court has found:

> Attorneys are permitted wide latitude in their closing arguments. Hammond v. Hall, 586 F.3d 1289, 1335 (11th Cir. 2009) (finding the Georgia court reasonably applied Strickland in denying a claim of ineffective assistance of counsel because the petitioner did not establish the action of counsel (failing to move for a mistrial based on prosecutorial misconduct) outside the wide range of reasonable professional assistance), cert. denied, 562 U.S. 1145 (2011). However, attorneys should not make "[i]mproper suggestions, insinuations, or assertions" that are

> intended to mislead the jury or appeal to passions or prejudices during closing arguments. United States v. Hope, 608 Fed. Appx. 831, 840 (11th Cir. 2015) (per curiam).

Spencer v. Sec'y, Fla. Dep't of Corr., No. 3:14-CV-589-J-39PDB, 2017 WL 897303, at *7 (M.D. Fla. Mar. 7, 2017) (not reported in Fed. Supp.).

Giving the prosecutor wide latitude in closing argument, the comments of the prosecutor were not so egregious as to have influenced the jury to reach a more severe verdict than it otherwise would have. Defense counsel's representation did not fall outside the range of reasonably professional assistance in failing to object. Moreover, there is no reasonable probability that the outcome of the proceeding would have changed if defense counsel had objected or moved for dismissal based on the prosecutor's alleged improper comments in closing.

The court has reviewed the closing argument and finds nothing egregious in the prosecutor's summation of the facts to the jury. Ex. B4 at 418, 421. The prosecutor said the defendant "sliced the front" of the victim's throat, id. at 417, and apparently during his testimony, the victim was motioning towards the front of his throat. Ex. B3 at 187. When asked to point to his neck, the victim apparently pointed underneath his ears. Id. at 187-88. Of course, the jury was able to watch the victim gesticulate as he

testified, and then the court instructed the jury to base its verdict on the evidence.

There was nothing impermissible about the state arguing it had proved its case beyond a reasonable doubt.   Ex. B4 at 421, 430.   Therefore, counsel did not perform deficiently in failing to object.   Also, the prosecutor's argument that Petitioner did not just show up to rummage through the cab was reasonably based on the evidence presented by the state.   Id. at 430.

Regarding any failure to object to the prosecutor's attempt to summarize the law, the jury was repeatedly instructed to base its decision on the law provided by the trial court in its instructions.   The jury was told both before and after closing argument to rely on the law contained in the instructions and to reach its verdict only on the evidence heard from the testimony of the witnesses and seen in the form of the exhibits in evidence.

The Court presumes the jury acted according to law and followed the court's instructions.   Therefore, any failure of counsel to object did not amount to deficient performance.   As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in Martinez is inapplicable and does not excuse the procedural default of ground five C.   Thus, Petitioner has failed to establish cause for the procedural default of his claim raised in ground five C and the

Court finds his default is not excused. Accordingly, ground five C is deemed procedurally barred and ultimately defaulted.

## XIV. GROUND FIVE D

> Defense counsel fails to request special, authorized, bastard jury instruction based on defense posture and prosecution's misleading inferences concerning defense witness and defendant.

Supplemental Petition at 15.

Petitioner has shown neither cause nor prejudice for failure to properly present this claim in the state courts. As such, the claim is unexhausted and procedurally defaulted. As Petitioner relies on Martinez, this Court will undergo a merits analysis for ground five D.

Petitioner complains the jury was not given an instruction: "concerning the matter of prior felony convictions and how this fact could not be considered by them as substantive evidence of Defendant's guilt; that, Mr. Duncan's prior conviction is not to be considered substantive evidence that he would take the stand and commit perjury." Supplemental Petition at 15-16. Petitioner contends his counsel performed deficiently for failure to request a special instruction based on the fact that Petitioner took the stand and admitted another uncharged crime. Id. at 16. Petitioner complains that the least

counsel could have done was request a "bastardized jury instruction" to assist the jurors and the defense. Id.

In pertinent part, the court instructed the jury:

> You may find some of the evidence not reliable or less reliable than other evidence. You should consider how the witnesses acted as well as what they said. Some things you should consider are: Did the witness seem to have an opportunity to see and know the things about which the witness testified?
>
> Did the witness seem to have an accurate memory?
>
> Was the witness honest and straightforward in answering the attorney's questions?
>
> Did the witness have some interest in how the case should be decided?
>
> Does the witness' testimony agree with the other testimony and other evidence in the case?
>
> Has the witness been offered or received any money, preferred treatment or other benefit in order to get the witness to testify?
>
> Did the witness at some other time make a statement that is inconsistent with the testimony he or she gave in court?
>
> Has the witness been convicted of a felony or misdemeanor crime of dishonesty?
>
> . . . .

52

The defendant in this case has become a witness. You should apply the same rules to consideration of his testimony that you apply to the testimony of the other witnesses.

. . . .

A statement claimed to have been made by the defendant outside of court has been placed before you. Such a statement should always be considered with caution and be weighed with great care to make certain it was freely and voluntarily made.

Therefore, you must determine from the evidence that the defendant's alleged statement was knowingly, voluntarily and freely made. In making this determination you should consider the total circumstances including but not limited to whether when the defendant made the statement he had been threatened in order to get him to make it and whether anyone had promised him anything in order to get him to make it.

If you conclude the defendant's out-of-court statement was not freely and voluntarily made you should disregard it.

Ex. B4 at 468-71.

In <u>Floyd v. Fla. Dep't of Corr.</u>, No. 3:15CV361-MCR/CAS, 2017 WL 4229054, at *7 (N.D. Fla. July 7, 2017) (not reported in Fed. Supp.), <u>report and recommendation adopted by</u> 2017 WL 4226141 (N.D. Fla. Sept. 22, 2017), the district court opined: "Florida's standard jury instructions are presumed correct and are preferred over special instructions. <u>Gutierrez v. State</u>, 177 So.

3d 226, 230 (Fla. 2015). Florida courts are generally required to adhere to the standard jury instructions unless the judge determines the instruction does not accurately and adequately state the relevant law. Moody v. State, 359 So. 2d 557, 560 (Fla. 4th DCA 1978)." Here, the instructions given by the trial court correctly stated Florida law, and Petitioner does not contend otherwise. He simply asserts that a "bastardized instruction" should have been given to aid the jury.

Because the standard instruction accurately stated Florida law, Petitioner has failed to demonstrate that trial counsel was deficient in failing to request a "bastardized instruction." Indeed, as long as the jury instructions are proper, any failure to object does not amount to a serious and substantial deficiency that is measurably below the standard of competent counsel. Davis v. Sec'y, DOC, No. 2:12-cv-659-FtM-38CM, 2015 WL 3509324, at *7 (M.D. Fla. June 4, 2015) (not reported in F.Supp.3d) (allowing that counsel is not ineffective for allowing the use of a standard instruction instead of proposing a special instruction as the Florida Supreme Court approves the standard jury instruction and its interpretation of state law is unassailable).

Petitioner cannot demonstrate that but for counsel's alleged error, the outcome of the proceeding would have been different. The Court concludes Petitioner's unexhausted claim of ineffective assistance of counsel is not

substantial, and Petitioner has failed to show he falls within the narrow parameters of the ruling in <u>Martinez</u>. As he has failed to demonstrate that his underlying claim of ineffective assistance of counsel is a substantial one, Petitioner simply does not meet the narrow exception set forth in <u>Martinez</u> and his default is not excused.

In short, the Court finds ground five D is unexhausted and procedurally defaulted. Upon review, Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of ground five D. In this case, Petitioner has not demonstrated he meets the allowable exceptions to the procedural default doctrine. Having failed to establish cause for the procedural default of this ground, the Court finds it to be procedurally barred and should not be addressed on its merits in this federal post-conviction proceeding. Therefore, ground five D is due to be denied as procedurally defaulted.

## XV.   GROUND FIVE E

> Defense counsel omitted to notice trial court of the
> flawed jury instruction as read to the jurors.

Supplemental Petition at 16.

This claim is unexhausted and procedurally defaulted. Petitioner has not shown cause for the default and prejudice from violation of federal law.

Petitioner relies on <u>Martinez</u> and asks that the default of ground five E be excused pursuant to <u>Martinez</u>.   Consequently, this Court will undergo a merits analysis for ground five E.

Petitioner complains trial counsel failed to object to the trial judge's omission of the lesser included offense of robbery in count three and to the principal instruction when principal was not listed on the verdict form. Supplemental Petition at 16-17.   The record shows Petitioner was charged by amended information with attempted murder in the first degree with a weapon, kidnaping, and armed robbery.   Ex. B1 at 39.   Count three charges:

> "KENNETH KARLESTON NEWSOME on June 10, 2014 . . . did unlawfully by force, violence, assault, or putting in fear, take money or other property, to-wit: U.S. currency, the property of Marcel Jean Gilles, from the person or custody of Marcel Jean Gilles, with the intent to permanently or temporarily deprive Marcel Jean Gilles of the money or other property, and in the course of committing said robbery, carried a deadly weapon, to-wit: knife . . . ."

<u>Id</u>.

The court has reviewed the jury instructions, and counsel's performance was not deficient for failure to object to the robbery instruction as it was adequately set forth in the instructions given.   The court instructed:

> As to count three, to prove the crime of robbery, the state must prove the following four elements beyond a reasonable doubt:   One, Kenneth Newsome

took money or other property from the person or custody of Marcel Jean-Gilles.

Two, force, violence, assault or putting in fear was used in the course of the taking.

Three, the property taken was of some value.

Four, the taking was with the intent to permanently or temporarily deprive Marcel Jean-Gillis of his right to the property or any benefit from it or appropriate the property of Marcel Jean-Gilles to his own use or to the use of any person not entitled to it.

In the course of the taking means that the act occurred prior to, contemporaneous with or subsequent to the taking of the property and that the act and the taking of the property constitute a continuous series of acts or events.

In order for the taking of property to be robbery it is not necessary that the person robbed be the actual owner of the property. It is sufficient if the victim has the custody of the property at the time of the offense.

The taking must be by the use of force or violence or by assault so as to overcome the resistance of the victim or by putting the victim in fear so that the victim does not resist. The law does not require that the victim of robbery resist to any particular extent or that the victim offer any actual physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does resist, but unless prevented by fear there must be some resistance to make the taking one done by force or violence.

> In order for a taking by force, violence or putting in fear to be robbery it is not necessary that the taking be from the person of the victim.   It is sufficient if the property taken is under the actual control of the victim so that it cannot be taken without the use of force, violence or intimidation directed against the victim.

Ex. B4 at 462-63.

The court further instructed:

> If you find the defendant guilty of the crime of robbery then you must further determine beyond a reasonable doubt if in the course of committing the robbery the defendant carried some kind of weapon.

> . . . .

> If you find that the defendant carried a knife in the course of committing the robbery and that the knife was a deadly weapon you should find him guilty of robbery with a deadly weapon.

Id. at 463-64.

The court instructed what constitutes a deadly weapon.  Id. at 464.

The court then instructed on the lesser included crime of theft.  Id. at 465.

The court also gave a principal instruction:

> if the defendant helped another person or persons commit or attempt to commit a crime the defendant is a principal and must be treated as if he had done all the things the other person or persons did if the defendant had a conscious intent that the criminal act be done and the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the person or

persons to actually commit or attempt to commit the crime.

To be a principal the defendant does not have to be present when the crime is committed or attempted.

Id. at 466.

The verdict form for count three allows the jury to select finding the defendant guilty of robbery in the first line.  Ex. B1 at 54.  Underneath that selection, the jury was told, if the jury found the defendant guilty of the offense, the jury must choose one of the findings: did carry, display or use a deadly weapon during the commission of the offense; or did carry, display or use a weapon during the commission of the offense; or did not carry, display or use a weapon during the commission of the offense.  Id.  The jury selected the first, the deadly weapon.  Id.

The instructions given by the court aligned with the verdict form. Based on the above, the jury could have selected robbery and not selected the deadly weapon finding.  The jury certainly had that option.  There was significant evidence presented to the jury that a knife (or knives) was used by the perpetrator in the back seat of the cab during the offense; therefore, the jury's finding was well supported by the evidence presented at trial.

Finally, counsel will not be deemed deficient for failure to object to a principal instruction or the lack of a special verdict form under the principal theory.  See Evans v. State, 995 So. 2d 933, 949 (Fla. 2008) (per curiam) (allowing the state to proceed under dual theories).  In Petitioner's case, the verdict clearly reflects the jury found Petitioner physically committed the crime with a deadly weapon ("We find that the Defendant did carry, display or use a deadly weapon during the commission of the offense.").  See Chapman v. Sec'y, Fla. Dep't of Corr., No. 1:17-cv-179-TKW-GRJ, 2020 WL 6747390, at * 14 (N.D. Fla. Aug. 4, 2020) (rejecting an ineffective assistance of counsel claim finding there is not a reasonable probability that counsel's failure to object to a verdict form affected the outcome of the trial), report and recommendation adopted by 2020 WL 6746619 (N.D. Fla. Nov. 17, 2020).

Therefore, the Court is not convinced that ground five E has some merit. As such, Petitioner has failed to show that the narrow exception recognized in Martinez is applicable.  Since Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception.  Therefore, he has failed to establish cause for the procedural default of his claim raised in ground five E and his default is not excused.  In sum, the Court finds ground five E procedurally barred and should not be addressed on its merits in this federal proceeding.

## XVI.   GROUND FIVE F

> Defense counsel fails to object to the imposed sentence
> imposed by trial court.

Supplemental Petition at 17.

This claim is unexhausted and procedurally defaulted, but Petitioner relies on <u>Martinez</u> and asks that the default of ground five F be excused pursuant to <u>Martinez</u>.  As such, this Court will apply a merits analysis for ground five F.

In this ground, Petitioner contends the imposition of the consecutive sentence is an illegal sentence, the verdict does not support this sentence, and his counsel performed deficiently by failing to object to the sentence.  <u>Id</u>. at 18.  This claim has no merit.  The verdict supports the court's sentence.  Ex. B1 at 51-54.  It is entirely within the trial court's discretion to impose sentences consecutively or concurrently.  <u>Bradley v. State</u>, 174 So. 3d 1052, 1054 (Fla. 5th DCA 2015) (the court is "given discretion to impose the sentences concurrently or consecutively as it sees fit").  <u>But cf. Jones v. Crosby</u>, 857 So. 2d 972, 973 (Fla. 3rd DCA 2003) (per curiam) (different rules apply if habitual offender sentences or mandatory minimum sentences are involved).  The trial court exercised its discretion in sentencing Petitioner to consecutive terms of confinement.  Ex. B1 at 95-98, 184.  Thus, any objection by defense counsel

would not have been sustained.   Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (a defense attorney need not make a meritless motion or objection that would not have obtained relief).   Under these circumstances, defense counsel was not deficient for failing to object to the imposition of consecutive sentences.

The court is not convinced that, under these circumstances, counsel's performance fell outside the range of reasonably professional assistance. Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained under the circumstances presented.

The Court finds ground five F does not have some merit.   As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in Martinez is inapplicable and does not excuse the procedural default of ground five F.   In conclusion, Petitioner has failed to establish cause for the procedural default of his claim raised in ground five F and his default is not excused.   Accordingly, ground five F is procedurally barred and should not be addressed on its merits.

## XVII.   GROUND FIVE G

Defense counsel failed to preserve matters and now his egregious    omissions    combined    with    governing principles of law amounts to violation of due process.

Supplemental Petition at 18.

Ground five G is unexhausted and procedurally defaulted. Petitioner asks that this default be excused pursuant to Martinez. As such, the Court will apply a merits analysis for ground five G.

Petitioner argues his counsel performed deficiently by failing to properly file a motion for judgment of acquittal arguing weight and sufficiency, the manipulation of the trial by pyramiding inferences, and the misuse of two separate charges (count one, attempted murder in the first degree with a weapon, and count three, armed robbery). Supplemental Petition at 18.

The record demonstrates the following. At the close of the state's case, Mr. Thurston stated:

> As the state has rested the defense enters a motion for a J.O.A. on the standard after reviewing the evidence in the light of the favor of the prosecution a trier of fact could not have found essential elements of the crimes alleged beyond a reasonable doubt in Tibbs versus Florida.

Ex. B3 at 344. The state responded that the state had presented a prima facie case of guilt and met its burden of showing all elements of the crimes, venue, and identification. Id. The Court, taking all the evidence in the light most favorable to the state, found the state had established a prima facie case for all three counts. Id. at 344-45. Mr. Thurston renewed the motion for judgment

of acquittal and the court denied the motion finding the state had met a prima facie case "for all the elements in all three counts of the information."   Ex. B4 at 391-92.

Broadly reading defense counsel's argument in support of the motion for judgment of acquittal, it appears that counsel may have addressed the weight of the evidence as well as the sufficiency in relying on Tibbs v. Florida, 457 U.S. 31, 37-38 (1982) (a conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt; a reversal based on the weight of the evidence, goes to whether a greater amount of credible evidence supports one side of an issue or cause than the other) (quotation and citation omitted).   The 1st DCA, however, found that counsel made a boilerplate motion for judgment of acquittal because he did not point to any elements of the crimes for which he believed evidence was lacking. Ex. B8 at 6.

The Court is not convinced that counsel performed deficiently in this regard because the trial court specifically found the state made a prima facie case for all of the elements in all three counts of the information.   Therefore, even if counsel had pointed out elements of the crimes for which he believed evidence was lacking, he would not have prevailed on his motion as evidenced

by the court's ruling and based on the evidence presented at trial. Furthermore, the greater weight of the more credible evidence supported the state's case.   Even assuming deficient performance, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had made a more complete motion, his motion would have been granted under the circumstances presented.

The record shows the state made a prima facie case for all of the elements of attempted murder with a weapon and for armed robbery.   The state presented competent evidence to support every element of the crime of attempted murder (a premeditated design and specific intent to commit the underlying crime of murder, an overt act designed to effectuate that intent, carried beyond mere preparation, but falling short of executing the ultimate design) and every element of the crime of armed robbery (the defendant took money or other property; force, violence, assault, or putting in fear was used in the course of the taking; the property taken was of some value; the taking was with the intent to permanently or temporarily deprive the victim of his right to the property or any benefit from it or appropriate the property of the victim, to his own use or to the use of any person not entitled to it, with a determination of whether the defendant carried some kind of deadly weapon, weapon, or no weapon).   <u>Williams v. State</u>, 531 So. 2d 212, 216 (Fla. 1st DCA

1988) (jury found defendant guilty of attempted first degree murder with a crowbar and armed robbery and the 1st DCA affirmed).

The court is not convinced that, under these circumstances, counsel's performance fell outside of the range of reasonably professional assistance. Even if it did, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had done as Petitioner argues he should have done, Petitioner would have prevailed on his motion.

In sum, the Court finds ground five G does not have some merit. As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in <u>Martinez</u> is inapplicable and does not excuse the procedural default of ground five G. Thus, Petitioner has failed to establish cause for the procedural default of his claim raised in ground five G and the Court finds his default is not excused. Accordingly, ground five G is deemed procedurally barred and ultimately defaulted.

## XVIII.   GROUND SIX

> Petitioner's Sixth Amendment right to the U.S. Constitution was violated when initial collateral postconviction counsel failed to exhaust those grounds of constitutional violations as a result of trial court and defense counsel's egregious acts.

Supplemental Petition at 20.

Petitioner contends, "Mr. Hamrick's ommission [sic] to present those violations as listed above in Ground Five is so egregeous [sic] in nature that the failure to raise 6th and 14th Amendment Rights violations within the initial collateral [sic] postconviction motion constitutes ineffective assistance of counsel." Id. To the extent Petitioner is attempting to raise a separate claim of ineffective assistance of collateral counsel, this claim is due to be denied. There is no constitutional right to counsel in post-conviction proceedings; therefore, there is no viable, freestanding claim for the denial of effective assistance in those proceedings. Chavez, 742 F.3d at 944. Indeed, "[l]ongstanding U.S. Supreme Court precedent holds that a habeas petitioner cannot assert a viable, freestanding claim for the denial of the effective assistance of state collateral counsel in post conviction proceedings." Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1263 (11th Cir. 2014) (citations omitted), cert. denied, 574 U.S. 832 (2014), 575 U.S. 986 (2015).

Although Petitioner states he relies on Martinez, "Martinez did not . . . create a freestanding claim for challenging a conviction or sentence based on the alleged ineffective assistance of state post-conviction counsel." Lambrix, 756 F.3d at 1262 (footnote omitted). Thus, Petitioner fails to present a viable claim for post-conviction relief. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction

proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Therefore, ground six is denied.

In the alternative, to the extent Petitioner is simply attempting to rely on <u>Martinez</u> to overcome his procedurally defaulted claims raised in his Supplemental Petition, the Court has already addressed that assertion in ground five (including the subclaims) and has concluded that the claims raised in the Supplemental Petition are not substantial. Accordingly, Petitioner's default is not excused and ground five (including the subclaims) is deemed procedurally barred and ultimately defaulted. Therefore, ground six is due to be denied as well.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Petitioner's Request for an Evidentiary Hearing (Doc. 22) is **DENIED**.

2. The Petition (Doc. 1) and Supplemental Petition (Doc. 14) are **DENIED**.

3. This action is **DISMISSED WITH PREJUDICE**.

4. The **Clerk** shall enter judgment accordingly and close this case.

5. If Petitioner appeals the denial of his Petition (Doc. 1) and Supplemental Petition (Doc. 14), **the Court denies a certificate of**

appealability.[10]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this _13th_ day of July, 2021.

_____
UNITED STATES DISTRICT JUDGE

sa 7/9
c:
Kenneth Karlston Newsome
Counsel of Record

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.